***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner George T. Glenn, and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the holding of the Deputy Commissioner's decision. Pursuant to its authority under N.C.G.S. § 97-85, the Full Commission has modified in part and affirmed in part the Deputy Commissioner's decision and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-trial Agreement as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and that the Industrial Commission has jurisdiction of the parties and the subject matter of this action. That all the parties are subject to and bound by the provisions of the North Carolina Worker's Compensation Act.
2. The employer-employee relationship existed between the defendant employer and the plaintiff employee at all relevant times alleged herein.
3. Plaintiff's average weekly wage was $341.20 per week at all relevant times herein.
4. Travelers' Property Casualty was the carrier on risk at all relevant times herein.
5. Plaintiff contracted the compensable occupational diseases of carpal tunnel syndrome and ulnar nerve compression on or about March 28, 1998, but defendants denied plaintiff's claim for thoracic outlet syndrome and any other condition.
6. The issues to be determined from this hearing are as follows:
 a) Whether plaintiff developed thoracic outlet syndrome as a direct result of employment with defendant-employer?
 b) If so, what, if any additional, workers' compensation benefits is plaintiff entitled to receive?
 ***********
The Pre-Trial Agreement along with its attachments and any stipulations that have been submitted by the parties are hereby incorporated by reference as though they were fully set out herein.
 ***********
Based on the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant-employer for approximately ten years. In 1996, plaintiff began working in the position of doubler operator. This position required plaintiff to use her hands and arms at and above her shoulder level on a regular and continuous basis.
2. On or about March 28, 1998, plaintiff developed the compensable occupational diseases of bilateral carpal tunnel syndrome and ulnar nerve compression. These claims were accepted by defendants by way of a Form 60 dated on or about June 10, 1998.
3. On May 11, 1998, plaintiff underwent surgery on her right hand and elbow. Similar procedures were performed on plaintiff's left hand and elbow on July 13, 1998. Dr. McGinnis performed the procedures. Plaintiff was out of work as a result of her surgeries from April 4, 1998 through September 14, 1998, and she was paid disability benefits for this period.
4. Plaintiff returned to work for defendant-employer as a doubler operator on or about September 14, 1998. Plaintiff continued in this position until March 3, 2000 when she was moved to the position of ratti after Dr. McGinnis determined that she could no longer perform the duties of the doubler operator position. Plaintiff was experiencing such problems as pain going up from her elbow into her shoulders, numbness in her hands and fingers, and pain in her back and shoulders. Plaintiff worked in the ratti position until March 19, 2000. Dr. McGinnis removed her from work on March 24, 2000 due to her continuing problems. Dr. McGinnis was of the opinion that plaintiff's overhead work was causing her continuing problems.
5. Dr. McGinnis was of the opinion that plaintiff had developed thoracic outlet syndrome and/or her carpal tunnel syndrome had returned and that additional tests were needed to make that determination. Defendants would not approve the tests but plaintiff was seen by Dr. Charles S. Kiell. Dr. Kiell was of the opinion that plaintiff had developed thoracic outlet syndrome.
6. Drs. McGinnis and Kiell were both of the opinion that plaintiff's condition had either been caused by her job with defendant-employer or her job had exacerbated her condition. Both were of the opinion that plaintiff's positions with defendant-employer had placed her at an increased risk of developing thoracic outlet syndrome.
7. Dr. McGinnis was of the opinion that plaintiff could not perform either of the positions that had been offered to her by defendants after she had been released by him to return to work. Note that plaintiff did attempt to perform both positions and after her continuing problems Dr. McGinnis removed plaintiff from work and she has not been released to return to work.
8. Plaintiff upon the recommendation of Dr. McGinnis underwent breast reduction surgery in an attempt to control the thoracic outlet syndrome she was suffering. This surgery did not solve her problem and she continues to suffer from said condition.
9. Plaintiff has been given a 10% permanent partial disability rating to both of her arms as a result of the admittedly compensable conditions she developed from her position with defendant-employer.
10. Plaintiff's average weekly wage at the time of her contraction of the compensable occupational disease was $341.20 per week, yielding a compensation rate of $227.48 per week.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff developed thoracic outlet syndrome as a direct result of her position with defendant-employer. Plaintiff's job placed her at an increased risk of developing the occupational disease as compared to general population not so employed. N.C.G.S. § 97-53(13).
2. Plaintiff is entitled to receive total disability benefits from March 3, 2000 through March 19, 2000 and from March 24, 2000 and continuing until she has returned to work or further orders of the Industrial Commission. N.C.G.S. § 97-29.
3. Plaintiff is entitled to the payment of the medical expenses incurred for the treatment of the injuries she sustained, and any further treatment reasonably required to effect a cure, give relief, or lessen plaintiff's period of disability. N.C.G.S. § 97-25.
5. Plaintiff has a 10% permanent partial disability to both arms as a result of her compensable occupational disease. N.C.G.S. § 97-31.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the Deputy Commissioner's holding and enters the following:
 AWARD
1. Subject to counsel fees hereinafter approved, defendants shall pay to plaintiff total disability benefits at the rate of $227.48 per week beginning March 3, 2000 through March 19, 2000 and from March 24, 2000 and continuing through the date of this hearing and thereafter until plaintiff has returned to work or further orders of the Industrial Commission. All accrued compensation shall be paid in one lump sum.
2. Defendant shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of plaintiff's compensable injury when bills for same have been submitted to and approved by the Industrial Commission, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
3. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff under paragraph 1 of this AWARD shall be deducted from that sum and paid to plaintiff's counsel. Thereafter, every fourth check for compensation shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs of this action.
 S/_____________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_____________________________ THOMAS J. BOLCH COMMISSIONER
S/_____________________________ DIANNE C. SELLERS COMMISSIONER